## Reineman *versus* Blair.

1. Pending a lease certain repairs became necessary and a written agreement was entered into between the landlord and the tenant, by which the landlord was to be permitted to enter and make the repairs necessary to render the building safe, and a stated reduction of rent was allowed to compensate the tenant for the loss from the inconvenience and damages ensuing from the repairs. In an action for the rent, *Held*, that evidence on the part of the defendant tending to show loss and damages arising from the unexpected length of time occupied in making the repairs was improperly admitted. The defendant could not set up the inconvenience and loss to his business resulting from the repairs to the property unless the completion thereof had been unreasonably delayed.

2. An affidavit made by the agent of the landlord in a suit against the latter by the contractor, that the work was unreasonably delayed, was properly admitted on behalf of defendant as an admission by the landlord of a delay in making the repairs.

November 8th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1880, No. 4.

Covenant by Henry C. Reineman, for use of Adam Reineman, against Kinder Blair.

On the 21st of January 1874, Henry C. Reineman leased to Kinder Blair, a large five-story L shaped brick building, known as No. 29 and rear of 27 Fifth Avenue, Pittsburgh, for the term of five years from the 1st of April 1874, at a rent of $10,000

per annum, payable quarterly, under which lease Blair went into possession, occupying the basement, first floor and some of the upper rooms of the building as a restaurant, and renting out the rest of it to various parties. When Blair entered the upper story was rented to Mr. Otto Krebs for a lithographic establishment, and it was stipulated in the lease that Krebs was not to be disturbed in his possession during his term.

In the spring of 1876 Adam Reineman became the owner of the leased premises, and on the 9th of July 1876, Henry C. Reineman assigned the lease to him by endorsement. Krebs's lease having expired, Blair renewed the contract with him, and remained in possession.

Late in the summer of 1877 it was discovered that the heavy presses and stones used by Krebs in his business had caused the house to settle, and Blair, becoming alarmed, called in the building inspector of Pittsburgh, who, on examination, condemned the premises, and notified Reineman that he must at once repair and secure the house, and this led to the formation of an agreement between Reineman and Blair, dated October 18th 1877, whereby all payments made up to that time by the latter were accepted as in full for rent up to October 1st 1877, and his rent for the balance of his term was reduced to $7000 per annum in consideration of his permitting Reineman, with his employees, to enter on the premises and to make the needed repairs, which were to be begun immediately, but there was no time stipulated within which they were to be done or finished.

Reineman made a contract with a firm, J. C. Schultz & Son, to repair and strengthen the house, put in iron girders, pillars, and such other appliances as were needed to insure its safety. The work was immediately begun, but in the course of its progress the damage was discovered to be more serious than had been anticipated, and it took much longer to do it than was expected, so that it was not fully finished until about February 1778.

By a subsequent agreement between the parties Blair's term was shortened, and he surrendered the premises on the 14th of February 1878, but having paid no rent, the present suit was brought to recover the same. The *narr.* filed was an ordinary declaration in covenant on the lease, to which the defendant pleaded that he was ousted of his possession by the plaintiff, and that the damages exceeded the rent reserved.

At the trial, before Ewing, P. J., the plaintiff put in evidence the lease, the agreement of October 18th 1877, to show the reduction of the rent, and the possession of the premises by defendant, and rested.

The defendant then offered the agreement of October 18th 1877, and the depositions of Theodore Bruback and J. G. Skiles in regard to the damages sustained by defendant in his business by reason of

[Reineman *v.* Blair.]

the repairs to the effect that they materially interfered with his business because of the accumulation of dust in the restaurant, and thereby driving customers away, and that the injury to defendant was serious, and the repairs were unreasonably delayed. In the estimation of these witnesses the damages which were thereby sustained by the defendant amounted to from $3000 to $5000. The plaintiff objected to this testimony as incompetent and irrelevant, but the court overruled the objections. (First and second assignments of error.)

Defendant offered to prove by the defendant (Kinder Blair) that at the time he entered into the agreement of October 18th 1877, Reineman assured him that his business should not be interfered with for more than three weeks in making the repairs referred to in the agreement..

Plaintiff objected to this.evidence as incompetent and contradictory of the written agreement of the parties.

The answer of the court was: "The offer is at least competent to prove the reasonable time to make the improvements." (Third assignment.)

Defendant offered to prove by this witness and others, that the plaintiff at the time of the making of the contract of the 18th of October 1877, assured the defendant, that he, plaintiff, had preparations all made for the repair of the premises occupied by defendant; that he could have the work all done, so that the defendant could prosecute his business without interruption in three weeks from the time of making the contract; that on the faith of these representations he signed the paper, offered in evidence, and that the matter of time was the essential matter of his contract and understood at the time. This for the purpose of showing that the plaintiff violated his contract, and induced the defendant to sign the paper in evidence upon representations and inducements which were not fulfilled, and that the work of repair could have been done in a short time, and that the work was continued over three weeks.

Objected to by plaintiff because: 1. It is incompetent and irrelevant. 2. It contradicts the written agreement made between plaintiff and defendant on October 18th 1877.

The court said: "Without proof of fraud or mistake in procuring the agreement, I am unable to see how the evidence can be admitted to vary the terms of the written contract. But it is evidence to show the necessary time to be occupied in the repairs, and the understanding that it was important that they should be done promptly, and for this purpose it is admitted." (Fourth assignment.)

Defendant offered affidavit of Augustus R. Reineman, agent for Adam Reineman, made May 2d 1878, being affidavit of defence of Adam Reineman in case 78, July Term 1878; C. J. Schultz &

[Reineman *v.* Blair.] .

Son *v.* Adam Reineman, Schultz being contractor.  Said affidavit being in the handwriting of counsel in that case and the case on trial, and by him endorsed; in connection with the rules of the Court of Common Pleas of Allegheny county in relation to affidavits of claim and defence; the case being at issue on said affidavit of defence, and now on trial list for the day.  Offered for the purpose of showing the admission of Reineman as to the delay in making the repairs, the subject of controversy in that case.

Objected to by plaintiff as being incompetent, not being made by the plaintiff in this case; that the affidavit is filed in a different case and by different parties, and predicated on a different contract in writing.

Which objections were overruled.  (Fifth assignment.)

The verdict was for defendant, and plaintiff took this writ, his assignments of error being those set forth above.

*Wier & Gibson* and *J. Ludwig Koethen*, for plaintiff in error. —It was error in the court below to allow the defendant to prove all the loss sustained by him by these repairs.  Such testimony had a tendency to, and doubtlessly it did, confuse the minds of the jury, and cause them to lose sight of the fact that these losses and damages had been already compensated and paid for by the plaintiff. If there was any undue delay in the progress of the work, then the proof should have been confined to the damage caused by such delay, over and above what would have been a reasonable time in which it should have been finished.  For the purpose of showing the time necessary for these repairs, the plaintiff's was not the proper evidence.  The plaintiff was not an expert, capable of judging of what would be a proper time for doing work of this kind, and his opinion as to the length of time required would be worth no more than the mere opinion of any other man.  The case in which the affidavit was filed is not connected with the present case; it was one in which the present plaintiff is named on the record as defendant, but in which the present defendant has no concern whatever.

*Thomas M. Marshall*, for defendant in error.—The first assignment is to the admission of the deposition of Mr. Bruback, because the witness was permitted to give all the facts and estimate the loss to Blair from the interruption of his business.  This was the only fair way of submitting the evidence, otherwise the witness would be called upon to decide when the unjust delay in effecting the repairs commenced.  That was a fact for the jury on all the evidence.  It was not error to admit evidence of the verbal assurance of Reineman contemporaneous with the making and execution of the agreement.

The affidavit was used by Reineman to prevent judgment.  It

was as much his act as if he had qualified to it personally. It was not competent in the case in which it was filed unless it was made with his approbation and consent.

Mr. Justice PAXSON delivered the opinion of the court, November 15th 1880.

We think it was error to admit the evidence referred to in the first and second specifications. Under the agreement between the parties the plaintiff below had the right to enter upon the premises leased by the defendant and make the repairs in question. The defendant not only agreed to this in writing, but he further stipulated to accept a certain reduction of the rent "as full compensation to him, or to his sub-tenants for any and all inconvenience or damage arising from, or caused or to be caused, by the work aforesaid, or by the past faulty condition of the building either to him or to his sub-tenant, or any of them." The agreement further provided that "the work shall be done forthwith, and as speedily finished as possible." The action below was to recover rent alleged to be due under the lease, as reduced by the agreement of 18th October 1877. It is very clear the defendant could not set up the inconvenience and loss to his business resulting from the repairs to the property unless the completion thereof had been unreasonably delayed. Yet the evidence referred to was just such evidence as would have been proper had the plaintiff entered without right and made the repairs against the will of the defendant. In other words the defendant was allowed to prove the entire extent of the interference with his business by the repairs and the entire loss sustained by him instead of confining the inquiry to the damages caused by the delay. This was calculated to mislead the jury, and even if cured to some extent by the charge of the court, yet the whole matter was so hopelessly blended together by the evidence that it would require a jury of more than average intelligence to arrive at an accurate conclusion. Indeed, if it be conceded that there was needless delay and a defence to that extent, it is not too much to say that there is not sufficient evidence in the case to base an intelligent verdict upon. The testimony in regard to the delay is extremely vague and unsatisfactory. Two or three witnesses do speak of the repairs being unnecessarily delayed. Their opinion, however, was based upon the fact that there were days when no workmen were at the building. But they were not experts, not even mechanics, and they do not venture to say whether the delay was for a week or for a month. No competent builder who had inspected the building when the repairs were going on, or after it was completed, was called to testify that the work was unreasonably delayed.

The third and fourth assignments are also sustained. The learned judge refused to admit the evidence referred to in these

[Reineman *v.* Blair.]

specifications for the purpose of varying the written contract. Thus far he was right, as there was neither allegation nor proof of fraud, accident or mistake. But he did admit it as evidence of the time necessary to complete the repairs. In this he was as clearly wrong. The evidence did not come up to the measure of such proof. It was merely the opinion of the plaintiff that the repairs could be completed within three weeks. But being a mere opinion he refused to bind himself to complete them within that time. The evidence shows that the opinion was a mistaken one. The repairs were found to be more extended than was anticipated. The building was in a dangerous condition; it had swayed laterally; it was necessary to take out the old girders and columns and replace them with new ones of iron, and to take out several floors more than was contemplated, and replace them with new ones. If it had been important to show that at the time of the agreement the plaintiff believed the repairs could be done in three weeks the evidence would have been proper. But it was not important to do so, nor would it have been relevant. It would have thrown no light upon the question of unnecessary delay.

The affidavit referred to in the fifth specification was properly admitted. That it was not made by the plaintiff, but by his agent, may weaken the effect of it with the jury. But it was made for the plaintiff, presumably with his knowledge, and he has had the benefit of it. If it served him a good turn there I see no reason why it should not be used against him here. It was not the mere affidavit of one who could be called as a witness; it was a defence set up by the plaintiff to a suit against him by the contractor for these very repairs.

Judgment reversed, and a *venire de novo* awarded.